IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ROBERT FISHER
and MARY FISHER,

       Plaintiffs,

vs.                                                                                      No. CIV 07-0421 RB/CEG

THE CITY OF LAS CRUCES,
a municipality organized pursuant to
the laws of the State of New Mexico, and
its subsidiary, the Las Cruces Police Department,
OFFICER JOANN CHRISTINE SCHNELL,[1]
a law enforcement officer employed by the Las
Cruces Police Department, individually and in
her official capacity as a police officer,
OFFICER ROBERTO GUTIERREZ,
a law enforcement officer employed by the Las
Cruces Police Department, individually and in
his official capacity as a police officer, and
OFFICERS JOHN/JANE DOE, 1-5
law enforcement officers employed by the Las
Cruces Police Department, individually and in
their official capacities as police officers,

       Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Defendants' Motion for Summary Judgment (Doc. 5), filed on June 27, 2007. Jurisdiction arises under 28 U.S.C. §§ 1331, 1343, and 1367. Having considered the submissions of counsel, relevant law, and being otherwise fully advised, I grant this motion and dismiss Plaintiffs' state-law claims without prejudice.

**I.**    **Background.**

Plaintiffs brought this action under 42 U.S.C. §1983 for violation of Plaintiff Robert Fisher's

---

[1] In her affidavit, this Defendant clarifies that her name is Christine Chavez. (Doc. 6-3, Def. Ex. B, Chavez Aff.)

(herein "Mr. Fisher's") rights under the Fourth Amendment.  Plaintiffs assert that police officers[2] (herein "Individual Defendants" unless identified by name) employed by the City of Las Cruces (herein "City") used excessive and unnecessary force, and failed to prevent the use of excessive and unnecessary force, during the course of the arrest and detention of Mr. Fisher on April 30, 2005.[3]  Plaintiffs allege municipal liability against the City with respect to the §1983 claim.  Additionally, Plaintiffs allege assault and battery under state law on behalf of Mr. Fisher, and loss of consortium under state law and §1983 on behalf of Mary Fisher (herein "Ms. Fisher").  Plaintiffs allege the City is vicariously liable for the state-law claims.  Plaintiffs seek compensatory damages, punitive damages, attorney fees, costs, and interest.

Defendants move for summary judgment on the §1983 claims, asserting (1) qualified immunity on behalf of the Individual Defendants, (2) absence of municipal liability on behalf of the City, and (3) loss of consortium is not actionable under §1983.  Plaintiffs oppose the motion on the issues of qualified immunity and municipal liability, but withdraw Ms. Fisher's claim for loss of consortium under §1983.

**II.     Facts.**

The following statement of facts is set forth in the light most favorable to Plaintiffs, with all reasonable inferences from the record drawn in their favor.  *See Fuerschbach v. Southwest Airlines Co.*, 439 F.3d 1197, 1207 (10th Cir. 2006).

---

[2] Plaintiffs joined "Officers John/Jane Doe 1-5" in their Complaint.  Only Officer Gutierrez and Officer Chavez are identified in the affidavits submitted by the parties.  At times, Plaintiffs refer to "other officers" or "officers" in their affidavits.

[3] Notably, Plaintiffs do not allege that Defendants were deliberately indifferent to a serious medical need during the arrest and detention.  *See Howard v. Dickerson*, 34 F.3d 978 (10th Cir. 1994) (liability for injury arising from handcuffing arrestee with known medical restriction could be based on claim of deliberate indifference to medical need, in violation of Fourteenth Amendment).

On April 30, 2005, Mr. Fisher took medications after waking up, including Xanax. (Doc. 6, Undisp. Facts ¶ 1.) Mr. Fisher takes Xanax for panic disorder and anxiety. (Undisp. Facts ¶ 3.) At around 3:30 p.m., Mr. Fisher consumed more Xanax. (Undisp. Facts ¶ 2.)

Between the late afternoon and 7:00 p.m., Mr. Fisher drank most, or all, of a pint of vodka. (Undisp. Facts ¶ 4.) Mr. Fisher fell asleep in his backyard, and when he woke up, he began hallucinating. (Undisp. Facts ¶ 5.)

One of Mr. Fisher's hallucinations involved his perception of a large animal in the Fisher backyard. (Undisp. Facts ¶ 6.) In response to this hallucination, Mr. Fisher ran inside of his house and retrieved a nine millimeter pistol with a full magazine. (Undisp. Facts ¶ 7.)

Mr. Fisher walked back outside, and placed a round in the chamber of the pistol. (Undisp. Facts ¶ 8.) At this point, Mr. Fisher was both staggering and suffering from distorted vision. (Undisp. Facts ¶ 9.) Mr. Fisher then shot himself in the stomach. (Undisp. Facts ¶ 10.) Mr. Fisher fell to his knees, after which the pistol discharged again. (Undisp. Facts ¶ 11.) The second round struck Mr. Fisher in the left bicep. (Undisp. Facts ¶ 12.) Ms. Fisher, who was inside of the house, called 911 and reported that Mr. Fisher had shot himself. (Undisp. Facts ¶ 13.)

As she called 911, Ms. Fisher went outside, retrieved the handgun from Mr. Fisher, and placed the gun in the kitchen. (Doc. 8-3, Pl. Ex. B, M. Fisher Aff. ¶¶ 6-7.) Ms. Fisher informed the 911 operator that the gun was a nine-millimeter, the gun was in the kitchen, Mr. Fisher was outside, and Mr. Fisher no longer had the gun. (Doc. 8-2, Pl. Ex. A, Tr. of 911 Call at 3-8; M. Fisher Aff. ¶ 8.)

Ms. Fisher explained to the 911 operator that Mr. Fisher was delirious and he had been drinking. (Tr. of 911 Call at 1-4.) When the dispatcher asked whether Mr. Fisher had threatened Ms. Fisher with the gun, Ms. Fisher responded "No, not me." (Tr. of 911 Call at 4.) Ms. Fisher

reported that Mr. Fisher was saying he was "tired of living" and that Mr. Fisher "obviously had too much to drink." (Tr. of 911 Call at 6.)

A call was broadcast by the dispatcher.[4]  (Doc. 6-2, Def. Ex. A, Gutierrez Aff. ¶¶ 3-4.) Officer Gutierrez heard the dispatcher say that shots had been fired at the home, that there was a suicidal subject with a gun at the home, and that a woman was also there. (*Id*.) Officer Chavez also heard the call come over dispatch. (Doc. 6-3, Def. Ex. B, Chavez Aff. ¶¶ 4-5.) Defendant Chavez recalls that the dispatcher indicated that the subject had a gun, had possibly shot himself, and he was in the backyard of the home. (*Id*.)

Officer Gutierrez arrived at Plaintiffs' home first, followed by Officer Chavez. (Undisp. Facts ¶ 16.) As Officer Gutierrez arrived, Ms. Fisher was in the front doorway to the home. (Undisp. Facts ¶ 17; Doc. 8, Pl. Resp. to Undisp. Facts ¶ 17.) When Officer Chavez arrived, Ms. Fisher was standing outside the front door. (Undisp. Facts ¶ 20.) Officer Gutierrez and other officers asked Ms. Fisher if anyone else was in the house. (M. Fisher Aff. ¶ 14.) Ms. Fisher responded that she was the only person in the residence other than Mr. Fisher. (M. Fisher Aff. ¶ 14.) Ms. Fisher told Officer Gutierrez and Officer Chavez that Mr. Fisher no longer had a gun or weapon and showed them where the gun was located. (M. Fisher Aff. ¶ 9.) The officers walked by the gun on their way to the backyard. (M. Fisher Aff. ¶ 10.)

As Officer Gutierrez and Officer Chavez entered the backyard, they had their guns drawn and they ordered Ms. Fisher to stay inside the house. (M. Fisher Aff. ¶¶ 11, 12.) Mr. Fisher was

---

[4] Plaintiffs objects to consideration of the Individual Defendants' statements concerning what the dispatcher said on the ground that such statements are inadmissible hearsay. Under Fed. R. Evid. 801, the dispatches are not hearsay. Defendants are not offering the statements for the truth of the matter asserted. It is irrelevant whether the dispatches are true. Instead, the statements go to the Individual Defendants' state of mind in responding to the call. *See Suggs v. Stanley*, 324 F.3d 672, 681-82 (8th Cir. 2003). Accordingly, Plaintiffs' hearsay objection to the Individual Defendants' statements concerning what the dispatcher said is overruled.

still hallucinating. (Undisp. Facts ¶ 29.)  Mr. Fisher was obviously injured and all of his injuries were on his left side.  (M. Fisher Aff. ¶ 13.)

The backyard was poorly lit.  (Gutierrez Aff. ¶ 14; Undisp. Facts ¶ 31.)  Due to the poor visibility and the shape of the backyard, Officer Gutierrez could not discern whether Mr. Fisher was the only person in the backyard.  (Gutierrez Aff. ¶ 14; Undisp. Facts ¶ 31.)  Officer Gutierrez and Officer Chavez approached Mr. Fisher with their guns drawn.  (Undisp. Facts ¶ 30.)

Mr. Fisher was "kneeling in a crouching position." (Doc. 8-4, Pl. Ex. 3, R. Fisher Aff. ¶ 12.) Mr. Fisher was unarmed and his hands were clearly visible.  (R. Fisher Aff. ¶¶ 10, 13.)  Officer Gutierrez noticed blood on Mr. Fisher's right shoulder.  (Undisp. Facts ¶ 26.)

Officer Gutierrez stood by with his gun drawn, while Officer Chavez frisked Mr. Fisher. (R. Fisher Aff. ¶ 14.)  Officer Gutierrez and Officer Chavez asked Mr. Fisher if there was anyone else in the house.  (R. Fisher Aff. ¶ 16.)  Mr. Fisher responded his wife was the only person in the home. (R. Fisher Aff. ¶ 16.)  Officer Gutierrez and Officer Chavez asked Mr. Fisher about his injuries, and he showed them his wounds.  (R. Fisher Aff. ¶ 17.)  Mr. Fisher had removed his shirt before the officers arrived. (R. Fisher Aff. ¶ 17.)

Officer Gutierrez went inside the house and left Officer Chavez with Mr. Fisher in the backyard. (R. Fisher Aff. ¶ 17.)  Officer Chavez pressed Mr. Fisher's shirt to his wound in an effort to stanch the bleeding.  (R. Fisher Aff. ¶ 19.)  Officer Gutierrez collected the handgun from the kitchen and returned outside.  (M. Fisher Aff. ¶¶ 15, 16.)

Officer Gutierrez ordered Mr. Fisher to lay flat on his stomach and spread his arms over his head. (R. Fisher Aff. ¶ 20.)  Mr. Fisher informed the officers that he could not comply because of his injuries.  (R. Fisher Aff. ¶ 21.)  Officer Gutierrez again ordered Mr. Fisher to lay flat on his stomach and spread his arms over his head.  (R. Fisher Aff. ¶ 22.)  Mr. Fisher did not comply.

Officer Chavez put her knee on Mr. Fisher's back, forced his injured arm to his back, and handcuffed Mr. Fisher with his arms behind his back. (R. Fisher Aff. ¶¶ 23; 27-28.)

Prior to handcuffing, Officer Chavez saw and spoke to Mr. Fisher about his wounds, including the wound to his bicep.[5] (R. Fisher Aff. ¶ 25.) As she handcuffed Mr. Fisher, Officer Chavez forced Mr. Fisher's arms back in a rough manner. (R. Fisher Aff. ¶ 27.) Mr. Fisher protested the handcuffing behind his back. (R. Fisher Aff. ¶ 28.) Officer Gutierrez had secured the handgun in the kitchen before Officer Chavez handcuffed Mr. Fisher. (R. Fisher Aff. ¶ 30.)

Mr. Fisher states in his affidavit: "The officers' actions in forcing my arms behind my back despite my injuries caused me to suffer excruciating pain. It felt like my bicep was tearing. I believe that their actions exacerbated my injuries." (R. Fisher Aff. ¶ 33.) After an ambulance arrived, the officers removed the handcuffs, placed Mr. Fisher on a gurney, yanked his arms above his head, and handcuffed him in a painful position. (R. Fisher Aff. ¶ 34.) Mr. Fisher states in his affidavit: "Dr. Jane, my neurologist has informed me that the officers' actions did in fact exacerbate my injuries." (R. Fisher Aff. ¶ 35.)

It is standard police procedure when dealing with a potentially armed suspect for one police officer to train a gun on the suspect while a second police officer handcuffs the suspect. (Undisp. Facts ¶ 48.) The officers learned these procedures for dealing with conventional criminal suspects and potentially armed criminal suspects both at the police academy and throughout their law enforcement careers. (Undisp. Facts ¶ 50.)

---

[5] In his affidavit, Mr. Fisher referred to photographs attached as exhibits to Plaintiffs' Response in Opposition to Defendants' Motion for Summary Judgment. (R. Fisher Aff. ¶ 32.) However, such photographs were not included in the record.

**III.     Standard.**

Summary judgment may be granted only when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment is appropriate "only where 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' " *Fuerschbach*, 439 F.3d at 1207 (quoting Rule 56(c)). The evidence, and all reasonable inferences drawn therefrom, must be viewed in the light most favorable to the nonmoving party. *See* Rule 56(c).

The movant bears the initial burden of demonstrating the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998). If this burden is met, the nonmovant cannot rest on the pleadings, but must set forth specific facts by reference to affidavits, deposition transcripts, or other exhibits to support the claim. *Serna v. Colorado Dept. of Corr.*, 455 F.3d 1146, 1151 (10th Cir. 2006) (citing *Behrens v. Pelletier*, 516 U.S. 299, 309 (1996) (noting that on summary judgment, the plaintiff can "no longer rest on the pleadings[.]")).

The nonmovant's burden is more than a simple showing of "some metaphysical doubt as to the material facts." *Matsushita Elec. Indust. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Evidence relied upon in opposition to summary judgment "may be insufficient to create a triable fact if it is nonspecific or otherwise non-responsive, vague, conclusory, or self-serving." *Piercy v. Maketa*, 480 F.3d 1192, 1197-98 (10th Cir. 2007). The nonmovant's "evidence, including testimony, must be based on more than mere speculation, conjecture, or surmise." *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

7

**IV.     Discussion.**

    **A.     The Individual Defendants are entitled to qualified immunity.**

A government official is entitled to qualified immunity from civil damages under §1983 when his or her "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "Qualified immunity is an entitlement not to stand trial or face the other burdens of litigation. The privilege is an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Saucier v. Katz*, 533 U.S. 194, 200-1 (2001) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)) (internal citations and quotations omitted).

When a defendant asserts the defense of qualified immunity, the burden shifts to the plaintiff to show (1) the official violated a constitutional or statutory right; and (2) the constitutional or statutory right was clearly established when the alleged violation occurred. *Verdecia v. Adams*, 327 F.3d 1171, 1174 (10th Cir. 2003) (citing *Scull v. New Mexico*, 236 F.3d 588, 595 (10th Cir. 2000) and *Albright v. Rodriguez*, 51 F.3d 1531, 1534 (10th Cir. 1995)).  If the plaintiff fails to satisfy either portion of this two-pronged test, the Court must grant the defendant qualified immunity. *Verdecia*, 327 F.3d at1174 (citing *Gross v. Pirtle*, 245 F.3d 1151, 1156 (10th Cir. 2001)).

In resolving questions of qualified immunity, courts are required to resolve a "threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right? This must be the initial inquiry." *Saucier v. Katz*, 533 U.S. at 201.  If, and only if, the court finds that a favorable view of the facts alleged establishes a violation of a constitutional right, the inquiry then proceeds to the next step; whether the right was clearly established at the time of the defendant's alleged unlawful conduct. *Id*; *see also*

*Scott v. Harris*, 127 S.Ct. 1769, 1774 (2007).  In rebutting a qualified immunity claim at the summary judgment level, a plaintiff "can no longer rest on the pleadings and the court looks to the evidence before it (in the light most favorable to the plaintiffs)[.]"  *Axson-Flynn v. Johnson*, 356 F.3d 1277, 1299 (10th Cir. 2004) (quoting *Behrens v. Pelletier*, 516 U.S. at 309).

In this case, Plaintiffs claim the Individual Defendants subjected Mr. Fisher to excessive force in violation of the Fourth Amendment when, during the course of his arrest and detention, they handcuffed Mr. Fisher despite his self-inflicted gunshot wounds.[6]  Upon review, the Court finds no constitutional violation, making qualified immunity appropriate.

In *Graham v. Connor*, 490 U.S. 386 (1989), the Supreme Court held "that all claims that law enforcement officers have used excessive force - deadly or not - in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach."  *Id*. at 395.

> The Court explained:
>
> The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight . . .. The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments - in circumstances that are tense, uncertain, and rapidly evolving - about the amount of force that is necessary in a particular situation.

*Graham*, 490 U.S. at 396-97.

Simply put, "the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or

---

[6] As mentioned *supra* at note 2, Plaintiffs do not assert a claim for deliberate indifference to a serious medical need.

motivation." *Graham*, 490 U.S. at 397.

Application of the Fourth Amendment excessive force standard requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interest against the countervailing governmental interests at stake. *See Wilson v. Meeks*, 98 F.3d 1247, 1253 (10th Cir. 1996). Among the factors to be considered are (1) the severity of the crime at issue; (2) whether the suspect poses an immediate threat to the safety of the officers or others; and (3) whether the suspect is actively resisting arrest or attempting to evade arrest by flight. *Graham*, 490 U.S. at 396 (citing *Tennessee v. Garner*, 471 U.S. 1, 8-9 (1985)). An assessment of the degree of force actually used is critical, *see Tennessee v. Garner*, 471 U.S. at 8-9, and the conduct of the officers must be evaluated under the totality of the circumstances. *Sevier v. City of Lawrence*, 60 F.3d 695, 699 (10th Cir. 1995).

Based on the evidence of record, the Individual Defendants were clearly justified in handcuffing Mr. Fisher. The first two factors identified in *Graham* indicate that the governmental interests at stake were high. First, the crime at issue was severe. The Individual Defendants received a dispatch that shots were fired in a residential area within the City limits. Discharge of a firearm within City limits is prohibited by City ordinance. *See* Las Cruces, N.M., Mun. Code §19-164. The severity of the offense is underscored by the fact that the Fisher home is located in a residential subdivision and other houses are located in close proximity to the Fisher home.[7] An errant gunshot could have hit a neighbor or passerby.

Second, the Mr. Fisher posed an immediate threat to the safety of the officers and others. The Tenth Circuit has recognized that a loaded gun is "by any measure an inherently dangerous

---

[7] The Court takes judicial notice of these facts.

weapon." *United States v. Copening*, ____ F.3d ___, 2007 WL 3173961, * 6 (10th Cir., Oct. 31, 2007). It is undisputed that Mr. Fisher was intoxicated and had recently shot himself twice. Officer Gutierrez and Officer Chavez heard on the dispatch that shots had been fired, there was a suicidal subject with a gun at the home who had possibly shot himself, and a woman was also at the home. The officers encountered Mr. Fisher in a dimly lit backyard; he was hallucinating and kneeling in a crouched position with obvious gunshot wounds.

However, the danger posed by Mr. Fisher was moderated by the fact that he was unarmed by the time the officers arrived on the scene. Ms. Fisher informed Officer Gutierrez and Officer Chavez that Mr. Fisher no longer had a gun or weapon and showed them where the gun was located in the kitchen. Officer Chavez frisked Mr. Fisher before Officer Gutierrez went back inside the house. Under these circumstances, the use of a small amount of force to handcuff Mr. Fisher would have been permissible under the Fourth Amendment. *See Cortez v. McCauley*, 478 F.3d 1108, 1128 (10th Cir. 2007) (en banc) (citing *Atwater v. City of Lago Vista*, 532 U.S. 318, 354-55 (2001) (noting that a normal lawful custodial arrest where the suspect is handcuffed, placed in a patrol car, and taken to the police station may be inconvenient and embarrassing, but not violative of the Fourth Amendment) and *Graham*, 490 U.S. at 396 ("Our Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it.")).

The critical issue is whether the Individual Defendants used excessive force in achieving the constitutionally permissible end of handcuffing Mr. Fisher.

According to Mr. Fisher's affidavit, which the Court has accepted as true and construed in the light most favorable to Plaintiffs, Officer Gutierrez directed Mr. Fisher "to lay flat on his stomach and spread his arms over his head." (R. Fisher Aff. ¶¶ 20-22.) Mr. Fisher informed the

officers that he could not do so because of his injuries. (R. Fisher Aff. ¶ 21.) Mr. Fisher, who was suffering from a gunshot wound to his stomach, was understandably reluctant to lie down with his stomach pressed to the ground. Similarly, Mr. Fisher may have been physically unable to lift his left arm above his head due to the gunshot wound to his left bicep. In light of the gunshot wounds to Mr. Fisher's stomach and arm, Mr. Fisher's inability to comply with Officer Gutierrez's command cannot be characterized as actively resisting or attempting to evade arrest. *See Cortez*, 478 F.3d at 1128 (holding that suspect's actions in briefly asking officers what was going on before he complied with their commands to exit the residence did not amount to resistance).

Accepting Mr. Fisher's affidavit as true and construing in the light most favorable to Plaintiffs, Officer Gutierrez felt comfortable enough with the situation to leave Officer Chavez alone with Mr. Fisher while Officer Gutierrez went inside the house. While she tended to Mr. Fisher's wounds, Officer Chavez was in a position to handcuff Mr. Fisher in front of his body. Instead, after retrieving the gun, Officer Gutierrez ordered Mr. Fisher to lay on his stomach wound and stretch his injured arm above his head. When Mr. Fisher indicated he was unable to comply with the commands, Officer Chavez roughly handcuffed Mr. Fisher behind his back despite his obvious and serious injuries. The excessive quality of this intrusion is underscored by Officer Chavez's knowledge of the severity of Mr. Fisher's wounds, the fact that he was unarmed, and the fact that an alternative means of handcuffing Mr. Fisher in front of his body was readily available.

The manner employed by the Individual Defendants to handcuff Mr. Fisher should have been more responsive to Mr. Fisher's condition. *See Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 904 (6th Cir. 2004) ("The diminished capacity of an unarmed detainee must be taken into account when assessing the amount of force exerted."). While the Court is reluctant to second-guess the actions of the officers in light of the "well settled" rule that "the reasonableness standard does not

require that officers use alternative, less intrusive means when confronted with a threat of serious bodily injury, " *Blossom v. Yarbrough*, 429 F.3d 963, 968 (10th Cir. 2005) (internal quotation marks omitted), the Individual Defendants used more force than necessary.

The inquiry does not end with this conclusion.  In order to recover on an excessive force claim, a plaintiff must show not only that the officers used greater force than would have been reasonably necessary to effect a lawful seizure, but also "some actual injury caused by the unreasonable seizure that is not de minimis, be it physical or emotional." *Cortez*, 478 F.3d at 1129. While proof of physical injury manifested by visible cuts, bruises, abrasions or scars, is not an essential element of an excessive force claim, the absence of injury in the context of the totality of the circumstances may suggest the absence of excessive force. *Cortez*, 478 F.3d at 1129 n. 24.

> The Tenth Circuit has explained:
>
> In some circumstances, unduly tight handcuffing can constitute excessive force where a plaintiff alleges some actual injury from the handcuffing and alleges that an officer ignored a plaintiff's timely complaints (or has otherwise made aware) that the handcuffs were too tight . . .. Although [the plaintiff] complained to the officer that the handcuffs were too tight, the summary judgment record presents too little evidence of any actual injury. We believe that a claim of excessive force requires some actual injury that is not de minimis, be it physical or emotional. The only evidence in the record is [the plaintiff's] affidavit that the handcuffs left red marks that were visible for days afterward . . .. This is insufficient, as a matter of law, to support an excessive force claim if the use of handcuffs is otherwise justified.

*Cortez*, 478 F.3d at 1129 (citations omitted).

In this case, the record presents no admissible evidence of any actual injury caused by the actions of the Individual Defendants.  The full extent of the evidence offered by Plaintiffs in support of their claim for actual injury due to the manner in which Mr. Fisher was handcuffed consists of the following statements contained in Mr. Fisher's affidavit:

> The officers' actions in forcing my arms behind my back despite my injuries caused me to endure excruciating pain. It felt like my bicep was tearing.  I believe that their

13

>actions exacerbated my injuries. . ... Dr. Jane, my neurologist, has informed me that the officers' actions did in fact exacerbate my injuries.

(R. Fisher Aff. ¶¶ 33, 35.)

Defendants object to Mr. Fisher's statement concerning what Dr. Jane said on the basis of hearsay. This statement constitutes hearsay because Plaintiffs offer it for the truth of Dr. Jane's statement that the gunshot injuries were exacerbated by the Individual Defendants' actions. *See* Fed. R. Evid. 801(c). A court may not consider hearsay evidence in depositions submitted to defeat summary judgment. *See Starr v. Pearle Vision, Inc.*, 54 F.3d 1548, 1555 (10th Cir. 1995). Similarly, Mr. Fisher's unsupported conclusory statement concerning his belief that his injuries were exacerbated is insufficient as a matter of law to withstand summary judgment. *See Frohmader v. Wayne*, 958 F.2d 1024, 1029 (10th Cir. 1992). Thus, no weight is accorded to these inadmissible and insufficient statements concerning some actual injury caused by the unreasonable seizure that is not de minimis.

Plaintiffs have presented no admissible evidence of an actual injury that is not de minimis caused by the handcuffing. As the Tenth Circuit stated in *Cortez*, "[t]his is insufficient, as a matter of law, to support an excessive force claim if the use of handcuffs is otherwise justified." *Cortez*, 478 F.3d at 1129. Under the totality of the circumstances, Plaintiffs have not established an excessive force claim. In response to Defendants' assertion of qualified immunity, Plaintiffs had the burden to show Defendants violated a constitutional or statutory right. *Verdecia v. Adams*, 327 F.3d at 1174. Taken in the light most favorable to Plaintiffs, the evidence of record establishes the conduct of the Individual Defendants did not violate a federal constitutional or statutory right. Defendants are entitled to qualified immunity on the § 1983 claim.

### B.     The City is entitled to summary judgment on the § 1983 claims.

The Supreme Court has held "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents.  Instead, it is when execution of a government's policy or custom . . . inflicts the injury that the government as an entity is responsible under § 1983." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).

In order to sustain a constitutional claim against the City, Plaintiffs must show both that "a constitutional violation occurred, and that some municipal policy was the moving force behind the violation." *DeAnzona v. City and County of Denver*, 222 F.3d 1229, 1236 (10th Cir. 2000).  "If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have authorized the use of constitutionally *excessive force* is quite beside the point." *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (emphasis in original). In other words, a municipality cannot be held liable unless a constitutional or statutory violation occurred.  *Trigalet v. City of Tulsa*, 239 F.3d 1150, 1154 (10th Cir. 2001).  Construed in the light most favorable to Plaintiffs, the evidence of record establishes that no federal constitutional or statutory violation occurred.  The absence of a federal constitutional or statutory violation is fatal to the municipal liability claims.  Accordingly, the City is entitled to summary judgment on Plaintiffs' municipal liability claims.

### C.     The Court declines to exercise supplemental jurisdiction over the state law claims.

Plaintiffs' claims under state law for assault, battery and loss of consortium are not cognizable under § 1983.  "Section 1983 does not . . . provide a basis for redressing violations of state law, but only for those violations of federal law done under color of state law." *Jones v. City & County of Denver*, 854 F.2d 1206, 1209 (10th Cir. 1988).  When a federal district court has

dismissed all claims over which it had original jurisdiction, the court may decline to exercise supplemental jurisdiction over state law claims. *Exum v. United States Olympic Comm.*, 389 F.3d 1130, 1138 (10th Cir. 2004) (citing 28 U.S.C. § 1367(c)(3)); *see also Doe v. Bagan*, 41 F.3d 571, 573, 577 (10th Cir. 1994) (approving dismissal of state law claims for lack of subject matter jurisdiction after summary judgment was granted as to all federal claims).

As the Supreme Court noted, "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine-judicial economy, convenience, fairness and comity-will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill,* 484 U.S. 343, 350 n. 7 (1988); *see also United States v. Botefuhr*, 309 F.3d 1263, 1273 (10th Cir. 2002).

In this case, Defendants have been granted summary judgment on the federal claims at an early stage of the litigation. The remaining claims arise under state law. The Court finds that the interests of judicial economy, convenience, fairness, and comity weigh against the exercise of supplemental jurisdiction. For these reasons, the Court declines to exercise jurisdiction over the remaining state-law claims and dismisses these claims without prejudice for lack of federal jurisdiction.

**WHEREFORE,**

**IT IS ORDERED** that Defendants' Motion for Summary Judgment (Doc. 5), filed on June 27, 2007, is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiffs' state law claims are **DISMISSED WITHOUT PREJUDICE FOR LACK OF FEDERAL JURISDICTION.**

_____
**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**